MURRAY M. HELM, JR., SBN 90426
**LAW OFFICES OF**
**MURRAY M. HELM, JR.**
550 WEST "C" STREET, SUITE 1155
SAN DIEGO, CALIFORNIA 92101
TELEPHONE: (619) 234-6744
FACSIMILE: (619) 234-6860

Attorneys for Use-Plaintiff Hudson P. Davis, Inc.,
dba Davis Mechanical Systems

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of HUDSON P. DAVIS, INC., dba DAVIS MECHANICAL SYSTEMS, a California corporation, <br><br> Use-Plaintiff, <br><br> v. <br><br> K.O.O. CONSTRUCTION, INC., a California corporation; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; and DOES 1 through 20, inclusive, <br><br> Defendants. | CASE NO: **'15CV2869 W    NLS** <br><br><br> COMPLAINT ON MILLER ACT PAYMENT BOND (40 U.S.C §3131)AND PROMPT PAYMENT ACT (31 U.S.C. §3901) <br><br> DEMAND FOR JURY TRIAL |

Use-Plaintiff Hudson P. Davis, Inc., dba Davis Mechanical Systems alleges:

## GENERAL ALLEGATIONS

1.     Jurisdiction of this action is proper in this Court pursuant to the Miller Act, Title 40 of the United States Code ("40 U.S.C."), sections 3131 – 3134, and pursuant to the Prompt Payment Act, Title 31 of the United States Code ("31 U.S.C.), sections 3901-3907.

2.     Pursuant to 40 U.S.C., section 3133(b)(3), venue is proper in the Southern District of California (this "District") because the contract was

performed in this District. Pursuant to 31 U.S.C., sections 3901-3907, venue is proper in this District because the contract work and payments were performed in this District.

3. Use-plaintiff Hudson P. Davis, Inc. dba Davis Mechanical Systems ("Davis") is, and at all times mentioned was, a California corporation, duly organized and existing under the laws of the State of California to perform the work described below, and doing business and having its principal place of business in the County of San Diego, State of California.

4. Davis is informed and believes defendant K.O.O. Construction, Inc. ("K.O.O.") is, and at all times mentioned was, a California corporation, with its principal place of business at 2510 Boatman Avenue, West Sacramento, California 95691, and doing business as a construction contractor in this District.

5. Davis is informed and believes defendant Travelers Casualty & Surety Company of America ("Travelers") is, and at all times mentioned was, a Connecticut corporation, duly qualified as a foreign corporation under the laws of the State of California, and authorized to and doing business in the State of California as a surety on Miller Act bonds required by the United States of America and its various agencies, within the jurisdiction of this Court, and doing business as a surety in this District.

6. Davis does not know the true names and capacities of defendants sued as DOES 1 through 20, inclusive, and therefore sues them by fictitious names. Davis is informed and believes DOES 1 through 20, inclusive, are in some way responsible for the events and Davis' damages described in this complaint. Davis will seek leave to amend this complaint when the true names and capacities of these defendants have been ascertained.

7. At all times mentioned each defendant was an agent, principal, representative, alter-ego and/or employee of the others and each was at all times

acting within the course and scope of said agency, representation and/or employment and with the permission of the others.

8. Davis is informed and believes that on or about November 4, 2011, K.O.O. entered into a written contract (the "Contract") with the United States of America, acting by and through the Department of Navy, Southwest Division, Naval Facilities Engineering Command (the "Government"), for a certain work of improvement known as Contract No. N62473-09-D1618, Task Order No. 0005, PE-6902M Repair of BEQ B-210724 and PE-11196 PV System, Del Mar (21) Area, Marine Corps Base, Camp Pendelton, California (the "Project").

9. Davis is informed and believes on or about November 15, 2011, K.O.O. as principal, and Travelers, as surety, executed and delivered to the Government a payment bond No. 9000-0045 in accordance with 40 U.S.C. section 3131 (the "Payment Bond"), whereby these defendants bound themselves jointly and severally for the purpose of allowing a joint action or actions against them. The Payment Bond inures to the benefit of persons or entities which provided labor, services, materials or equipment to K.O.O., or a subcontractor of K.O.O., in the prosecution of the work provided for in the Contract.

10. On or about August 7, 2012, Davis entered into a written subcontract with K.O.O. pursuant to which Davis agreed to furnish certain labor, services, materials and equipment, generally consisting of heating, ventilating and air conditioning, and plumbing work, to the Project as a subcontractor to K.O.O., for the agreed price of $700,000.00, plus changes thereto pursuant to which the monetary amount of the agreed price was increased (the "Subcontract"). A true and correct copy of the Subcontract, exclusive of documents incorporated therein, is attached as Exhibit "1" and incorporated by reference as though set forth in full at this point.

11. Despite timely demand to both K.O.O. and Travelers, Davis has not

LAW OFFICES OF MURRAY M. HELM, JR.
550 West "C" Street, Suite 1155
San Diego, California 92101
(619) 234-6744

3

been paid the Subcontract balance of at least $108,013.19. Further, Davis is owed interest on progress and retention payments K.O.O. failed to pay in a timely manner.

FIRST CLAIM FOR RELIEF
(Breach of Contract - Against K.O.O.)

12. Davis realleges and incorporates by reference paragraphs 1 through 11, above, as though set forth in full at this point.

13. Davis performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the Subcontract and changes to same.

14. K.O.O. breached the Subcontract by failing and refusing to fully pay Davis for the work performed, and failing to make timely payment of undisputed progress and retention billings.

15. As a direct and proximate result of K.O.O.'s breach, Davis has incurred damages not yet fully ascertained and subject to proof, but in the sum of at least $108,013.19, together with interest at the maximum legal rate from a date according to proof.

16. Pursuant to the terms of the Subcontract, Davis is entitled to its attorneys' fees.

SECOND CLAIM FOR RELIEF
(Common Count - Reasonable Value - Against K.O.O.)

17. Davis realleges and incorporates by reference paragraphs 1 through 16, above, as though set forth in full at this point.

18. Within the last year, Davis furnished construction labor, services, materials and equipment to K.O.O. at the special request of K.O.O. for the Project, who then and there promised to pay Davis the reasonable value of such labor, services, materials and equipment.

19.     The total and reasonable value of the labor, services, materials and equipment furnished by Davis to K.O.O. was, and is, the sum of at least $861,246.19.

20.     Despite demand by Davis, there is now due, owing and unpaid by K.O.O. to Davis the balance of at least $108,013.19, together with interest at the maximum legal rate from a date according to proof.

### THIRD CLAIM FOR RELIEF
(Common Count-Open Book – Against K.O.O.)

21.     Davis realleges and incorporates by reference paragraphs 1 through 16, above, as though set forth in full at this point.

22.     Within the last year in the County of San Diego K.O.O. became indebted to Davis on an open book account in the principal sum of at least $861,246.19.

23.     Only part of this sum has been paid, despite demand, and there is now due, owing and unpaid by K.O.O. to Davis the principal sum of at least $108,013.19, together with interest at the maximum legal rate from and after a date according to proof.

24.     Pursuant to California Civil Code, section 1717.5, Davis is entitled to reasonable attorneys' fees incurred in connection with the open book account.

### FOURTH CLAIM FOR RELIEF
(Common Count- Account Stated- Against K.O.O.)

25.     Davis realleges and incorporates by reference paragraphs 1 through 16, above, as though fully set forth in full at this point.

26.     Within the last four years in the County of San Diego, California, an account was stated in writing between Davis and K.O.O., wherein it was agreed K.O.O. was indebted to Davis in the amount of at least $861,246.19.

27. Only part of this sum has been paid, and there is now due, owing and unpaid by K.O.O. to Davis the principal sum of at least $108,013.19, together with interest at the maximum legally permissible rate from and after a date according to proof.

### FIFTH CLAIM FOR RELIEF
(Miller Act Payment Bond, 40 U.S.C. 3131-3134 - Against K.O.O. and Travelers)

28. Davis realleges and incorporates by reference paragraphs 1 through 27, above, as though set forth in full at this point.

29. The Payment Bond described in paragraph 9, above, was delivered to the Government and accepted by it, and inures to the benefit of Davis. A true and correct copy of the Payment Bond is attached as Exhibit "2" and incorporated by reference as though set forth in full at this point.

30. Within 90 days of the last date on which Davis furnished labor, services, materials and equipment to the Project Davis gave, or was excused from giving because Davis had a direct contractual relationship with K.O.O., written notice of its claim pursuant to 40 U.S.C. section 3133(b)(1) – (b)(2).

31. A period of more than 90 days, but less than one year, has elapsed since the last date on which Davis furnished labor and materials to K.O.O. on the Project.

32. K.O.O. and Travelers improperly failed to pay Davis the total amount due for the labor, services, materials and equipment furnished by Davis under the Subcontract, and failed to pay Davis the interest due as a result of K.O.O.'s untimely payment of progress and retention billings submitted to it by Davis.

33. As a direct and proximate result of K.O.O.'s and Travelers's failure to pay, Davis has incurred damages in the sum of at least $108,013.19. Pursuant

LAW OFFICES OF MURRAY M. HELM, JR.
550 West "C" Street, Suite 1155
San Diego, California 92101
(619) 234-6744

COMPLAINT ON MILLER ACT PAYMENT BOND

to the Payment Bond described in paragraph 9, above, there is now due and owing, jointly and severally from K.O.O. and Travelers to Davis, the sum of at least $108,013.19, together with interest at the maximum legal rate from a date according to proof.

34. Pursuant to the Payment Bond and the Subcontract, Davis is entitled to attorneys' fees and costs in this action.

SIXTH CLAIM FOR RELIEF

(Violation of the Prompt Payment Act, 31 U.S.C. §§3901-3907 – Against K.O.O. and Travelers)

35. Davis realleges and incorporates by reference paragraphs 1 through 34, above, as though set forth in full at this point.

36. Davis is informed and believes K.O.O. submitted progress and retention payment requests to the Government which included requests for payment for work performed by Davis, and was paid in full by the Government for such work performed by Davis on the Project.

37. Davis is informed and believes K.O.O. failed to make payment to Davis in the amount of Davis' proportionate share within seven days of K.O.O.'s receipt of each such progress and retention payment from the Government.

38. K.O.O.'s failure to pay Davis' proportionate share within seven days of receipt of each progress and retention payment from the Government is a violation of the Prompt Payment Act, 31 U.S.C. sections 3901-3907, and entitles Davis to an award of interest on each such payment from the time each such payment should have been made until actually paid.

39. Davis is informed and believes K.O.O. failed to furnish Davis and the Government written notice of any withholding of funds from Davis, as required by 31 U.S.C. section 3905(g).

40.     Pursuant to the terms of the Payment Bond provided by Travelers, and described in paragraph 9, above, Travelers is liable to Davis for the sanctions described in paragraphs 38 and 39, above, to the same extent as K.O.O..

SEVENTH CLAIM FOR RELIEF
(Violation of California Business and Professions
Code § 7108.5 – Against K.O.O. and Travelers)

41.     Davis realleges and incorporates by reference paragraphs 1 through 27, above, as though set forth in full at this point.

42.     Davis is informed and believes K.O.O. submitted progress and retention payment requests to the Government which included requests for payment for work performed by Davis, and was paid in full by the Government for such work performed by Davis on the Project.

43.     Davis is informed and believes K.O.O. failed to make payment to Davis in the amount of Davis' proportionate share within 7 days of K.O.O.'s receipt of each such progress and retention payment from the Government.

44.     K.O.O.'s failure to pay Davis's proportionate share within 10 days of receipt of each progress and retention payment from the Government is a violation of California Business and Professions Code, section 7108.5, and entitles Davis to an award of two percent interest per month on each such payment from the time each such payment should have been made until actually paid.

45.     Pursuant to California Business and Professions Code, section 7108.5, Davis is entitled to an award of attorneys' fees and costs incurred to collect the balance of progress and retention payments due.

46.     Pursuant to the terms of the Payment Bond provided by Travelers, and described in paragraph 9, above, Travelers is liable to Davis for the sanctions described in paragraphs 44 and 45, above, to the same extent as K.O.O.

LAW OFFICES OF MURRAY M. HELM, JR.
550 West "C" Street, Suite 1155
San Diego, California 92101
(619) 234-6744

WHEREFORE, Davis prays judgment against defendants, as follows:

ON THE FIRST, THIRD, FOURTH, FIFTH AND SEVENTH CLAIMS FOR RELIEF:

1. For reasonable attorneys' fees to be fixed by the Court upon post-judgment motion.

ON ALL CLAIMS FOR RELIEF:

1. For the principal sum of at least $108,013.19;

2. For consequential damages;

3. For costs of suit;

4. For interest at the maximum legal rate from a date according to proof; and

5. For such other relief as the Court deems just.


DATED: December 18, 2015      Respectfully submitted,

LAW OFFICES OF
MURRAY M. HELM, JR.

By: /s Murray M. Helm, Jr.
    MURRAY M. HELM, JR.
Attorneys for Use-Plaintiff Hudson P. Davis, Inc. dba Davis Mechanical Systems

146-018/PL001

9

LAW OFFICES OF MURRAY M. HELM, JR.
550 West "C" Street, Suite 1155
San Diego, California 92101
(619) 234-6744

LAW OFFICES OF MURRAY M. HELM, JR.
550 West "C" Street,   Suite 1155
San Diego, California 92101
(619) 234-6744

<u>DEMAND FOR JURY TRIAL</u>

Davis demands a trial by jury.

DATED:  December 18, 2015

Respectfully submitted,

LAW OFFICES OF
MURRAY M. HELM, JR.

*/s Murray M. Helm, Jr.*
MURRAY M. HELM, JR.
Attorneys for Use-Plaintiff Hudson P.
Davis, Inc., dba Davis Mechanical
Systems

COMPLAINT ON MILLER ACT PAYMENT BOND

# TABLE OF CONTENTS

Exhibit "1"        Subcontract                    Pgs. 1-18

Exhibit "2"        Payment Bond                   Pgs. 19-20

LAW OFFICES OF MURRAY M. HELM, JR.
550 West "C" Street, Suite 1150
San Diego, California 92101
(619) 234-6744

11

# EXHIBIT "1"

## K.O.O. CONSTRUCTION, INC.
## SUBCONTRACT AGREEMENT

WITNESSETH:

DESCRIPTION OF CONSTRUCTION PROJECT: Subcontractor agrees to furnish all necessary labor, materials, tools, equipment and supplies necessary to perform, and to perform all work set forth in "Section 2" hereof in the construction of:

Contract Number N62473-09-D-1618 TO #0005
PE-0902M Repair of BEQ B-210724 and PE11196 PV System
Del Mar (21) Area, Marine Corps Base (MCB) Camp Pendleton, CA

in accordance with the Terms and provisions of the Contract between Owner and Contractor, dated November 4,2011, including the General and Special Conditions Drawings and Specifications and other Documents forming or by reference made a part of said Contract hereinafter called the General Contract, all of which shall be considered part of this Subcontract by reference hereto, and Subcontractor agrees to be bound to Contractor and Owner by the terms and provisions thereof.

This Agreement is made at _____ Sacramento, CA _____ this 7th _____ day of August 20 12, between:

## CONTRACTOR

Name ____ K.O.O. Construction, Inc.

Address ___ 2510 Boatman Avenue

City _____ West Sacramento _____ State __ CA ___ Zip ___ 95691

Phone ___ (916) 371-3388 _____ Fax ___ (916) 371-1188

and

## SUBCONTRACTOR

Name DAVIS MECHANICAL SYSTEM

Address 1316 North Melrose Drive Suite E

City Vista State __ CA __ Zip 92083

Phone (760) 724-3990 Fax (760) 724-4047

On or about the 4th day of November 2011, Contractor entered into a prime contract to perform the following work:

## SECTION 1. ENTIRE CONTRACT

The phrase "Contract Documents" is defined to mean and include:

The plans, consisting of all bid set Sheets, Specifications, Special and General Conditions, Addenda and Illustrative Details, this subcontract, the Contract with the General Contractor, and the General Contractor's Prime Contract with the Owner and any attachments included within.

a) The terms "Contract" and "Prime Contract" may be used herein refer to the Contract between the Owner and Contractor for construction of the Project.

b) The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, together with all Drawings, Specifications, General Conditions, Supplemental General Conditions, Special Conditions, Addenda, Amendments and all other instruments issued by or on behalf of the Owner and / or prepared by the Architect for the Project, together with all other documents or instruments referred to in the aforesaid "Contract" and "Contract Documents".

c) The term "Subcontract" as used herein refers to this Subcontract together with any exhibits, attachments, or addenda, including without limitation all of the General Terms incorporated herewith and referred to herein.

d) The term "Subcontract Documents" as used herein refers to the "Contract", "Contract Documents" and "Subcontract".

e) In the event of a conflict between any of the Subcontract Documents, the documents shall take precedence in the following order and the one taking precedence controls the one(s) following:
   i) The Contract, together with all Change Orders, modifications and exhibits;
   ii) The Contract Documents in the order listed in the Contract;
   iii) The Subcontract, together with all Change Orders and exhibits, provided, however, the Subcontract shall control when the provisions of the Subcontract require stricter performance by the Subcontractor.

f) Subcontractor specifically agrees to perform in accordance with the provisions of the "Contract Documents"; provided, however, nothing in the Contract Documents shall be construed to limit any and all actual damages that may be incurred by Contractor and recovered by Contractor from Subcontractor as a result of any default by Subcontractor. Subcontractor agrees that he has read the "Contract Documents" and copies were made available for Subcontractor and Subcontractor agrees and acknowledges that he shall similarly make copies of such documents available to his Sub-Subcontractors, if any, and that all such Sub-Subcontractors will agree to be bound by the Contract Documents and Subcontract Documents.

g) The following clauses are incorporated by reference into this subcontract agreement.

- Far Clause 52.228-5 Insurance-work on Government installation
- Far Clause 52.203-6 Restrictions on subcontractor sales to the Government
- Far Clause 52.222.23 Equal Employment Opportunity for construction
- Far Clause 52.222-21 Prohibition of Segregated Facilities
- Far Clause 52.222-35 Equal Opportunity for special disabled veterans
- Far Clause 52.223-14 Toxic chemical release reporting
- Far Clause 52.225-11 Buy American Act – Construction materials
- Far Clause 52.225-15 Restrictions on certain foreign purchases
- Far Clause 52.227-1 Authorization and consent
- Far Clause 52.222-4 Contract work hours and Safety Standards Act – Overtime Compensation – Construction
- Payrolls and Basic Records
- Withholding of Funds
- Disputes Concerning Labor Standards
- Davis-Bacon Act
- Apprentices and Trainees
- Compliance with Copeland Regulations
- Far Clause 52.244-2 Subcontracts
- Contract Termination – Debarment
- Certification of Eligibility
- Far Clause 52.232.27 Prompt Payment For Construction Contracts

Subcontractor certifies that he is fully familiar with all of the terms of the Contract Documents, the location of the jobsite, and the conditions under which the work is to be performed and that he enters into this Agreement based upon his investigation of all such matters and is not relying on any opinions or representations of Contractor. This Agreement represents the entire agreement. The Contract Documents are incorporated in this Agreement by reference, and Subcontractor and his subcontractors will be and are bound by the Contract Documents insofar as they relate in any way, directly or indirectly, to the work covered by this Agreement. Subcontractor agrees to be bound

2

to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Contract Documents, to the extent of the work provided for in this Agreement, and that where, in the Contract Documents reference is made to Contractor, and the work or specifications therein pertains to Subcontractor's trade, craft, or type of work, then such work or specification shall be interpreted to apply to Subcontractor instead of Contractor.

## SECTION 2. SCOPE OF SUBCONTRACTOR'S WORK

Subcontractor agrees to furnish all labor, materials, equipment, appurtenances and other facilities required to perform the work to complete the following per NAVFAC RFP Documents dated March 1, 2010, Amendments 1-7, Tectonics plans and specifications dated June 8, 2012:

HVAC System:
1. Provide and install 56 fin tube base board heaters with thermostatic radiator valves
2. Provide and install heating hot water condensing boiler
3. Provide and install 2 HHW coil piping connections only to make up air units
4. Provide and install heating water pumps with VFD's
5. Provide and install 1 expansion tank
6. Provide and install 1 air separator
7. Provide and install mech type K copper piping HHW piping CPR requirements, piping insulation on new work only, and associated valves and fittings on new piping only. Repair all damaged insulation in existing piping is included.
8. Includes Split System at corridor – control and ductwork vents. Exhaust work is included/venting above windows

Plumbing System
1. Provide and install 4 floor drains with trap primer
2. Provide and install 12 washer boxes
3. Provide and install 2 mop sinks with faucets
4. Provide and install 2 laundry sinks with faucets
5. Provide and install 8 water hammer arrestors
6. Provide and install 1 gas regulators and 1 connection to existing gas meter, special meter required by Camp Pendleton
7. Provide and install 26 gas connections
8. Provide and install 1 emergency eye/face wash
9. Provide and install 1 domestic hot water heater
10. Provide and install 1 thermostatic mixing valve for the water heater
11. Provide and install 1 domestic water 800 gallon storage tank
12. Provide and install backflow preventer
13. Provide and install 1 floor sink with trap primer
14. Provide and install 7 hose bibs
15. Provide and install 2 water coolers
16. Provide and install 1 electronic water meter
17. Provide and install 1 condensate connection
18. Provide and install misc plumbing waster and copper type K water piping modifications, gas piping, condensate piping associated valves, fitting, sleeves, fire caulking, chlorination, and plumbing insulation on new work only complete and ready for use to five feet out per Camp Pendleton.

K.O.O. expects plumbing and mechanical to be exclusive with no change orders unless initiated by NAVFAC.

**Important:** Insurance Certificates in the amount required are necessary before the subcontractor can begin his work on site. This is a certified payroll job. All certified labor reports shall be in our possession with in ten (10) days of payroll payment date and based on the most recent rules and laws as defined by the Federal Department of labor and Far Clause prior to any payment by Contractor. The terms and conditions of this Subcontract supersede any terms, conditions or notations in Subcontractor's bid or proposal unless specifically repeated on our "Supplemental Subcontract Form". Similarly, the terms and conditions of this subcontract supersede any oral and written terms of understanding unless specifically repeated.

For the project in accordance with the Contract Documents and as more particularly specified in:

3

to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Contract Documents, to the extent of the work provided for in this Agreement, and that where, in the Contract Documents reference is made to Contractor, and the work or specifications therein pertains to Subcontractor's trade, craft, or type of work, then such work or specification shall be interpreted to apply to Subcontractor instead of Contractor.

## SECTION 2. SCOPE OF SUBCONTRACTOR'S WORK

Subcontractor agrees to furnish all labor, materials, equipment, appurtenances and other facilities required to perform the work to complete the following per NAVFAC RFP Documents dated March 1, 2010, Amendments 1-7, Tectonics plans and specifications dated June 8, 2012:

HVAC:
1. Provide and install 56 fin tube base board heaters with thermostatic radiator valves
2. Provide and install heating hot water condensing boiler
3. Provide and install 2 HHW coil piping connections only to make up air units (provided by others)
4. Provide and install heating water pumps with vfd's
5. Provide and install 1 expansion tank
6. Provide and install 1 air separator
7. Provide and install mech type K copper piping hhw piping CPR requirements, piping insulation on new work only, and associated valves and fittings on new piping only. Existing piping is not included.

*8 Includes split system at Corridor - Exhaust + Ductwork Vents*

Plumbing *Exhaust is Included / Venting + Bowl windows.*

1. Provide and install 4 floor drains with trap primer
2. Provide and install 12 washer boxes
3. Provide and install 2 mop sinks with faucets
4. Provide and install 2 laundry sinks with faucets
5. Provide and install 8 water hammer arrestors
6. Provide and install 1 gas regulators and 1 connection to existing gas meter
7. Provide and install 26 gas connections
8. Provide and install 1 emergency eye/face wash
9. Provide and install 1 domestic hot water heater
10. Provide and install 1 thermostatic mixing valve for the water heater
11. Provide and install 1 domestic water 800 gallon storage tank
12. Provide and install backflow preventer
13. Provide and install 1 floor sink with trap primer
14. Provide and install 7 hose bibs
15. Provide and install 2 water coolers
16. Provide and install 1 electronic water meter
17. Provide and install 1 condensate connection
18. Provide and install misc plumbing waster and copper type K water piping modifications, gas piping, condensate piping associated valves, fitting, sleeves, fire caulking, chlorination, and plumbing insulation on new work only complete and ready for use to five feet out per Camp Pendleton.

*Please Include My notes*

*Koo Express Plumbing + Mech to be Inclusive*

*With no change orders*

*Thru design build Assistance for B/V NAVFAC*

**Important:** Insurance Certificates in the amount required are necessary before the subcontractor can begin his work on site. This is a certified payroll Job. All certified labor reports shall be in our possession with in ten (10) days of payroll payment date and based on the most recent rules and laws as defined by the Federal Department of labor and Far Clause prior to any payment by Contractor. The terms and conditions of this Subcontract supersede any terms, conditions or notations in Subcontractor's bid or proposal unless specifically repeated on our "Supplemental Subcontract Form". Similarly, the terms and conditions of this subcontract supersede any oral and written terms of understanding unless specifically repeated.

For the project in accordance with the Contract Documents and as more particularly specified in:

3

See Section 1. Entire Contract, Above

In the event of any dispute between Contractor and Subcontractor over the scope of Subcontractor's work under the Contract Documents, Subcontractor will not stop work but will prosecute the work diligently to completion, the dispute to be submitted for resolution in accordance with Section 18 below.

## SECTION 3. CONTRACT PRICE

Contractor agrees to pay Subcontractor for the strict performance of his work, in the sum of <u>Seven Hundred Thousand & 00/100</u> (<u>$ 700,000.00</u>), subject to additions and deductions for changes in the work as may be directed in writing by Contractor, and to make payment in accordance with the Payment Schedule, Section 4,;

## SECTION 4. PAYMENT SCHEDULE

Contractor agrees to pay to Subcontractor in monthly progress payments of <u>Ninety</u> percent (<u>90</u> %) of labor and materials which have been placed in position, with funds received by Contractor from Owner for work performed by Subcontractor as reflected in Contractor's applications for payment. Such monthly progress payments shall be made (7) days after receipt of payment from the Owner by Contractor. Final payment to Subcontractor shall be made ten (10) days after the entire work required by the prime contract has been fully completed in conformity with the Contract Documents and has been delivered to and accepted by Owner, Architect, and Contractor, with funds received by Contractor from Owner in final payment for work under the prime contract. Subcontractor agrees to furnish, if and when required by Contractor, payroll affidavits, receipts, vouchers, releases of claims for labor, material, and from his subcontractors performing work or furnishing materials under this Agreement, all in form satisfactory to Contractor, and it is agreed that no payment hereunder shall be made, except at Contractor's option, until and unless such documents have been furnished. Contractor, at his option, may make any payment due hereunder by check made payable jointly to Subcontractor and any of his subcontractors, suppliers and material men who have performed work or furnished materials under this Agreement. Any payment made hereunder prior to completion and acceptance of the work, as referred to above, shall not be construed as evidence of acceptance or acknowledgment of completion of any part of any Subcontractor's work. All Payments will be paid based on your approved schedule of values approved on a monthly progress billing as approved by the general contractor. No payments will be made without the prior approval of the general contractor even if previous months conditionals have been sent to our office with a different approval than the owners.

## SECTION 5. TIME

Time is of the essence of this Agreement. Subcontractor shall provide Contractor within 15 days of Letter of Intent scheduling information and a proposed schedule for performance of his work in a form acceptable to Contractor. Subcontractor shall conform to Contractor's progress schedule and all revisions or changes made thereto. Subcontractor shall prosecute his work in a prompt and diligent manner in accordance with Contractor's progress schedule without delaying or hindering Contractor's work or the work of other contractors or subcontractors. Subcontractor shall coordinate the work covered by this Agreement with that of all other contractors, subcontractors, and of the Contractor, in a manner that will facilitate the efficient completion of the entire work. In the event Subcontractor fails to maintain his part of the Contractor's schedule, he shall, without additional compensation, accelerate the work as Contractor may direct until Subcontractor's work is in accordance with such schedule. Contractor shall have complete control of the premises on which the work is to be performed and shall have the right to decide the time and order in which various portions of the work shall be installed and the relative priority of the work of Subcontractor and other subcontractors, and, in general, all other matters pertaining to the timely and orderly conduct of the work of Subcontractor on the premises. Should Subcontractor be delayed in the prosecution or completion of the work by the act, neglect or default of Owner, Architect or Contractor, or should Subcontractor be delayed waiting for materials, if required by this Contract to be furnished by Owner or Contractor, or by damage caused by fire or other casualty for which Subcontractor is not responsible, or by the combined action of the workmen, in no way caused by or resulting from fault or collusion on the part of Subcontractor, or in the event of a lock-out by Contractor, then the time herein fixed for the completion of the work shall be extended the number of days that Subcontractor has thus been delayed, but no allowance or extension shall be made unless a claim therefore is presented in writing to Contractor within 48 hours of the commencement of such delay, and under no circumstances shall the time of completion be extended to a date which will prevent Contractor from completing the entire project within the time allowed Contractor by Owner for such completion.

No claims for additional compensation or damages for delays, whether caused in whole or in part by any conduct on the part of Contractor, including, but not limited to, conduct amounting to a breach of this Agreement, or delays by other subcontractors or Owner, shall be recoverable from Contractor, and the above-mentioned extension of time for completion shall be the sole remedy of Subcontractor; provided, however, that in the event Contractor obtains additional compensation from Owner on account of such delays, Subcontractor shall be entitled to such portion of the additional compensation so received by Contractor from Owner as is equitable under all of the circumstances. In the event that Contractor prosecutes a claim against Owner for additional compensation for any delay, Subcontractor shall cooperate fully with Contractor in the prosecution thereof and shall pay costs and expenses incurred in connection therewith, including actual attorneys' fees, to the extent that said claim is made by Contractor at the request of Subcontractor.

Subcontractor shall prepare and obtain approval as required by the Contract Documents for all shop drawings, details, samples, and do all other things necessary and incidental to the prosecution of his work in conformance with Contractor's progress schedule.

## SECTION 6.  CHANGES IN THE WORK

Subcontractor shall make any and all changes in the work described in the Contract Documents and this Agreement as directed by the Contractor 's Project Manager or Branch Manager in writing thru the use of a formal subcontract change order.  Such change or written direction shall not invalidate this Agreement.

If necessary, the contract price stated in Section 3 and the time for Subcontractor's performance shall be adjusted by appropriate additions or deductions mutually agreed upon before Subcontractor performs the changed work.  Subcontractor shall supply Contractor with all documentation necessary to substantiate the amount of the addition to or deduction from the price or time.  If Contractor and Subcontractor cannot agree on the amount of the addition or deletion, Subcontractor shall nonetheless timely perform the work as changed by Contractor's written direction.  Once Subcontractor receives Contractor's written direction, Subcontractor is solely responsible for timely performance of the work as changed by the written direction.  Changes are subject to the CHANGES Article or Section in the General or Special Conditions of the Specifications, Changes in the Work, and shall include no more than 5% total overhead and profit for changes by this subcontractor if the total overhead and profit is on a shared basis.

Payment for changed work shall be made in accordance with Section 4.

Subcontractor shall not make any changes in the work described in Section 2 or in any way cause or allow that work to deviate from the Contract Documents without written direction from Contractors.  If Subcontractor makes any changes in the work described in Section 2 without written direction from Contractor, such change constitutes an agreement by Subcontractor that he will not be paid for that changed work, even if he received verbal direction from Contractor or any form of direction, written or otherwise, from Owner or any other person or entity.  In addition, Subcontractor shall be liable for any and all losses, costs, expenses, damages, and liability of any nature whatsoever associated with or in any way arising out of any such change he makes without written direction from Contractor.

If a dispute arises between Contractor and Subcontractor about whether particular work is a change in the work described in Section 2, Subcontractor shall timely perform the disputed work and may give written notice of a claim for additional compensation for that work.  Such written notice of claim must be given within ten (10) days after such work is performed.  Subcontractor's failure to give written notice within the ten (10) days constitutes an agreement by him that he will not be paid for the disputed work.

No change, alteration, or modification to or deviation from this Agreement, the Contract Documents, prime contract, plans, or specifications, whether made in the manner provided in this provision or not, shall release or exonerate, in whole or in part, any bond or any surety on any bond given in connection with this Agreement, and no notice is required to be given to such surety of any such change, alteration, modification, or deviation.


## SECTION 7.  DAMAGES CAUSED BY DELAYS

If Subcontractor should default in performance of the work described in Section 2 or should otherwise commit any act which causes delay to the prime contract work, Subcontractor shall be liable for all losses, costs, expenses, liabilities and damages, including consequential damages and liquidated damages, sustained by Contractor, or for which Contractor may be liable to Owner or any other party because of Subcontractor's default.

If subcontractor fails to complete the work identified in Section 2 with in the time specified in the contract schedule, the subcontractor shall pay liquidated damages to the contractor in the amount of $ 7256.81 for BEQ 210724 and  $203 for PV Installation for each calendar day of delay until the work is completed or accepted.

## SECTION 8.  BONDING OF SUBCONTRACTOR (Not Applicable)

Concurrently with the execution of this Agreement, Subcontractor shall, subcontract, execute a labor and material bond and performance bond, in an amount equal to one hundred percent (100%) of the Contract Price.  Said bonds shall be executed by a corporate surety acceptable to Contractor and shall be in a form satisfactory to Contractor.  Contractors shall pay one time only the premium on said bonds unless otherwise provided herein or in the Contract Documents.

## SECTION 9.  LIENS

In case suit is brought on any claim or liens for labor performed or materials used on or furnished to the project, Subcontractor shall pay and satisfy any such lien or judgment as may be established by the decision of the court in said suit.  Subcontractor agrees within ten (10) days after written demand to cause the effect of any such suit or lien to be removed from the premises, and in the event Subcontractor shall fail so to do, Contractor is authorized to use whatever means in its discretion it may deem appropriate to cause said lien or suit to be removed or dismissed and the cost thereof, together with actual attorneys' fees, shall be immediately due and payable to Contractor by Subcontractor.  Subcontractor may litigate any such lien or suit provided he causes the effect thereof to be removed, promptly in advance, from the premises, and shall further do such things as may be necessary to cause Owner not to withhold any monies due to Contractor from Owner by reason of

such liens or suits.

It is understood and agreed that the full and faithful performance of this Agreement on the part of Subcontractor (including the payment of any obligations due from Subcontractor to Contractor, and any amounts due to labor or material men furnishing labor or material for said work) is a condition precedent to Subcontractor's right to receive payment for the work performed, and any monies paid by Contractor to Subcontractor under the terms of this Agreement shall be impressed with a trust in favor of labor and material men furnishing labor and material to Subcontractor on the work herein subcontracted.

Should this subcontractor ever place a Lien, Stop Notice or Miller Act Stop Notice against Contractor for any reason, Subcontractor shall take responsibility for all costs associated with this lien and all Contractors administration costs plus reasonable overhead and profit associated to remove lien from the project.

## SECTION 10. PROVISIONS FOR INSPECTION

Subcontractor shall at all times furnish to Contractor and his representatives safe and ample facilities for inspecting materials at the site of construction, shops, factories or any place of business of Subcontractor and his subcontractors and material men where materials under this Agreement may be in course of preparation, process, manufacture or treatment. Subcontractor shall furnish to Contractor as often as required by Contractor, full reports of the progress of the work at any place where material under this Agreement may be in the course of preparation or manufacture. Such reports shall show the progress of such preparation and manufacture in such details as may be required by Contractor, including, but not limited to, any plans, drawings or diagrams in the course of preparation.

## SECTION 11. MATERIALS AND WORK FURNISHED BY OTHERS

In the event the scope of work includes installation of materials or equipment furnished by others or work to be performed in areas to be constructed or prepared by others, it shall be the responsibility of Subcontractor to examine and accept, at the time of delivery or first access, the items so provided and thereupon handle, store and install the items with such skill and care as to insure a satisfactory completion of the work. Use of such items or commencement of work by Subcontractor in such areas shall be deemed to constitute acceptance thereof by Subcontractor. Loss or damage due to acts of Subcontractor shall be charged to the account of Subcontractor and deducted from monies otherwise due under this Agreement.

## SECTION 12. PROTECTION OF WORK

Subcontractor shall effectually secure and protect the work done hereunder and assume full responsibility for the condition thereof until final acceptance by Architect, Owner and Contractor. Subcontractor further agrees to provide such protection as is necessary to protect the work and the workmen of Contractor, Owner and other subcontractors from his operations.

Subcontractor shall be liable for any loss or damage to any work in place or to any equipment and materials on the jobsite caused by him or his agents, employees or guests.

## SECTION 13. SUPERINTENDENCE OF WORK

Subcontractor shall supervise his work or appoint someone to supervise all on site work. Supervision must be maintained 100% for the duration of subcontractors work. Subcontractor shall provide the name and contact information of the superintendent upon start of work.

## SECTION 14. LABOR RELATIONS

14.1    Subcontractor shall keep a representative at the jobsite during all times when Subcontractor's work is in progress, and such representative shall be authorized to represent Subcontractor as to all phases of the work. Prior to commencement of the work, Subcontractor shall notify Contractor who Subcontractor's representative is to be, and in the event of any change of representative Subcontractor shall notify Contractor who the new representative is to be prior to such change becoming effective.

Subcontractor acknowledges that Contractor has entered into labor agreements covering work at his construction job sites with the labor unions listed in Section 26 below and incorporated herein by reference.

Subcontractor agrees to comply with all of the terms and conditions of those labor agreements including trust fund payment into the respective labor trust funds set forth in the respective labor agreements, referred to in Section 26 below insofar as Subcontractor may lawfully do so, and in particular agrees to comply with the terms and provisions of said agreements setting forth the jurisdiction and scope of work claimed by each of such crafts and the procedure contained therein for resolution of jurisdictional disputes. In the absence of any such procedure, or if such procedure fails to promptly resolve the jurisdictional dispute, Subcontractor agrees, at his own cost and expense, upon request of Contractor, to take any and all lawful steps to secure a binding and final determination of said jurisdictional dispute by the National Labor Relations Board.

Subcontractor acknowledges that terms and conditions of the labor agreements with the unions listed herein below may require that Subcontractor comply with additional labor agreements with unions affiliated with the AFL-CIO but not listed. When the terms and

conditions of the below-referenced labor agreements so require, Subcontractor shall perform his jobsite work pursuant to all terms and conditions of an appropriate labor agreement with a union affiliated with the AFL-CIO.

Should there be picketing on Contractor's jobsite, and Contractor establishes a reserved gate for Subcontractor's purpose, it shall be the obligation of Subcontractor to continue the proper performance of his work without interruption or delay.

Subcontractor further promises and agrees that he will bind and require all of his subcontractors and their subcontractors performing jobsite work of the type covered by any of the labor agreements specified below to agree to all of the foregoing promises and undertakings, to the same effect as herein provided with respect to him.

14.2    Subcontractor shall comply with all equal employment opportunity and affirmative action requirements promulgated by any governmental authority, including, without limitation, the requirements of the Civil Rights Act of 1964.

14.3    Subcontractor shall comply with and agrees to be bound by all applicable Federal, State and local laws and regulations, including, but not limited to, all Fair Labor Standards Act provisions and California Labor Code provisions covering the work. Upon request, Subcontractor agrees to submit certified payroll reports to Contractor no later than three (3) working days after labor has been paid.

## SECTION 15.  RECOURSE BY CONTRACTOR

15.1    Failure of Performance
15.1.1    Notice to Cure.  If Subcontractor at any time refuses or neglects to supply enough properly skilled workers and proper materials, or fails to properly and diligently prosecute the work covered by this Agreement, or fails to make prompt payment to his workers, sub-subcontractors or suppliers, or becomes delinquent with respect to contributions or payments required to be made to any health and welfare, pension, vacation, apprenticeship or other employee benefit program or trust, or is otherwise guilty of a material breach of a provision of this Agreement, and fails within forty-eight (48) hours after receipt of written notice to commence and continue satisfactory correction of such default with diligence and promptness, then Contractor, without prejudice to any rights or remedies, shall have the right to any or all of the following remedies:

(a)    Supply such number of workers and quantity of materials, equipment and other facilities as Contractor deems necessary for the completion of Subcontractor's work, or any part thereof which Subcontractor has failed to complete or perform, and charge the cost thereof to Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit, and actual attorneys' fees incurred as a result of Subcontractor's failure of performance;

(b)    Contract with one or more additional contractors to perform such part of Subcontractor's work as Contractor shall determine will provide the most expeditious completion of the total work and charge the cost thereof to Subcontractor; and

(c)    Withhold payment of any monies due Subcontractor pending corrective action to the extent required by and to the satisfaction of Contractor.

In the event of an emergency affecting the safety of persons or property, Contractor may proceed as above without notice.

15.1.2    Termination for Default.  If Subcontractor fails to commence and satisfactorily continue correction of a default within forty-eight (48) hours after receipt by Contractor in performing Subcontractor's work, including a markup of fifteen percent (15%) for overhead and profit on such expenses, plus actual attorneys' fees as provided above, shall be deducted from any monies due or to become due Subcontractor to complete Subcontractor's work without any further compensation to Subcontractor for such use. Contractor also may furnish those materials and equipment, and/or employ such workers or subcontractors as Contractor deems necessary to maintain the orderly progress of the work.

In such case, Subcontractor shall be entitled to no further payment until the balance of Subcontractor's work has been completed. At that time, all of the costs incurred by Contractor in performing Subcontractor's work, including a markup of fifteen percent (15%) for overhead and profit on such expenses, plus actual attorneys' fees as provided above, shall be deducted from any monies due or to become due Subcontractor. Subcontractor shall be liable for the payment of any amount by which such expenses may exceed the unpaid balance of the Contract Price.

15.1.3    Termination for Convenience.  Contractor may at any time and for any reason terminate Subcontractor's services and work at Contractor's convenience. Cancellation shall be by service of written notice to Subcontractor's place of business.

Upon receipt of such notice, Subcontractor shall, unless the notice directs otherwise, immediately discontinue the work and placing of orders for materials, facilities and supplies in connection with the performance of this Agreement, and shall, if requested, make every reasonable effort to procure cancellation of all existing orders or contracts upon terms satisfactory to Contractor, or at the option of

Contractor, give Contractor the right to assume those obligations directly, including all benefits to be derived therefrom. Subcontractor shall thereafter do only such work as may be necessary to preserve and protect the work already in progress and to protect material and equipment on the jobsite or in transit thereto.

Upon such termination, Subcontractor shall be entitled to payment in accordance with Section 4 only as follows: (1) the actual cost of the work completed in conformity with this Agreement; plus, (2) such other costs actually incurred by Subcontractor as are permitted by the prime contract and approved by Owner; plus (3) overhead and profit as defined in the specifications or if not defined in the specifications no more than (5%) for overhead and profit. There shall be deducted from such sums as provided in this subparagraph the amount of any payments made to Subcontractor prior to the date of the termination of this Agreement. Subcontractor shall not be entitled to any claim or claim of lien against Contractor or Owner for any additional compensation or damages in the event of such termination and payment.

15.1.4  <u>Grounds for Withholding Payment</u>.  Contractor may withhold, or on account of subsequently discovered evidence, nullify the whole or part of any payment to the extent necessary to protect Contractor from loss, including costs and attorneys' fees, on account of (1) defective work not remedied; (2) claims filed or reasonable evidence indicating probable filing of claim; (3) failure of Subcontractor to make payments properly to his subcontractors or for material, labor or fringe benefits; (4) a reasonable doubt that this Agreement can be completed for the balance then unpaid; (5) damage to another subcontractor; (6) penalties assessed against Contractor or Subcontractor for failure of Subcontractor to comply with State, Federal or local laws and regulations; or (7) any other ground for withholding payment allowed by State or Federal law, or as otherwise provided in this Agreement.  When the above matters are rectified, such amounts as then due and owing shall be paid or credited to Subcontractor.

15.2    <u>Bankruptcy</u>

15.2.1  <u>Termination Absent Cure</u>.  Upon the appointment of a receiver for Subcontractor or upon Subcontractor making an assignment for the benefit of creditors or if Subcontractor seeks protection under the Bankruptcy Code or commits any other act of insolvency, Contractor may terminate this Agreement upon giving forty-eight (48) hours written notice, by certified mail, to Subcontractor and its surety, if any.  If an order for relief is entered under the Bankruptcy Code with respect to Subcontractor, Contractor may terminate this Agreement by giving forty-eight (48) hours written notice, by certified mail, to Subcontractor, its trustee, and its surety, if any, unless Subcontractor, the surety, or the trustee:

(a)    Promptly cures all defaults;
(b)    Provides adequate assurance of future performance;
(c)    Compensates Contractor for actual pecuniary loss resulting from such defaults; and
(d)    Assumes the obligations of Subcontractor within the statutory time limits.

15.2.2  <u>Interim Remedies</u>.  If Subcontractor is not performing in accordance with the schedule of work at the time of entering an order for relief, or at any subsequent time, Contractor, while awaiting the decision of Subcontractor or its trustee to reject or to accept this Agreement and provide adequate assurance of its ability to perform hereunder, may avail itself of such remedies under this Section as are reasonably necessary to maintain the schedule of work.

Contractor may offset against any sums due or to become due Subcontractor all costs incurred in pursuing any of the remedies provided hereunder, including, but not limited to, reasonable overhead, profit and actual attorneys' fees incurred as a result of Subcontractor's non-performance.

Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Contract Price.

## SECTION 16.  INDEMNIFICATION

16.1.1  <u>Subcontractor's Performance</u>.  With the exception that this Section 16 shall in no event be construed to require indemnification by Subcontractor to a greater extent than permitted under the public policy of the State of California, Subcontractor shall indemnify and save harmless Owner and Contractor, including their officers, agents, employees, affiliates, parents and subsidiaries and each of them, of and from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liability, in law or in equity, of every kind and nature whatsoever ("Claims") arising out of or in connection with Subcontractor's operations to be performed under this Agreement for, but not limited to:

(a)    Personal injury, including, but not limited to, bodily injury, emotional injury, sickness or disease, or death to persons, including, but not limited to, any employees or agents of Subcontractor, Owner, Contractor, or any other subcontractor and/or damage to property of anyone (including loss of use thereof), caused or alleged to be caused in whole or in part by any negligent act or omission of Subcontractor or anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable regardless of whether such personal injury or damage is caused by a party

8

indemnified hereunder.

(b)     Penalties imposed on account of the violation of any law, order, citation, rule, regulation, standard, ordinance or statute, caused by the action or inaction of Subcontractor.

(c)     Infringement of any patent rights, which may be brought against the Contractor or Owner arising out of Subcontractor's work.

(d)     Claims and liens (See Section 9) for labor performed or materials used or furnished to be used on the job, including all incidental or consequential damages resulting to Contractor or Owner from such claims or liens.

(e)     Subcontractor's failure to fulfill the covenants set forth in each subpart of Section 14, Labor Relations.

(f)     Failure of Subcontractor to comply with the provisions of Section 17.1, Casualty Insurance.

(g)     Any violation or infraction by Subcontractor of any law, order, citation, rule, regulation, standard, ordinance or statute in any way relating to the occupational health or safety of employees, including, but not limited to, the use of Contractor's or other's equipment, hoist, elevators, or scaffolds (See Sections 15 and 19).

The indemnification provisions of (a) through (g) above shall extend to Claims occurring after this Agreement is terminated as well as while it is in force. Such indemnity provisions apply regardless of any active and/or passive negligent act or omission of Owner or Contractor or their agents or employees. Subcontractor, however, shall not be obligated under this Agreement to indemnify Owner or Contractor for Claims arising from the sole negligence or willful misconduct of Owner or Contractor or their agents, employees or independent contractors who are directly responsible to Owner or Contractor, or for defects in design furnished by such persons.

16.1.2     Subcontractor shall:

(a)     At Subcontractor's own cost, expense and risk, defend all Claims as defined in Section 16.1.1 that may be brought or instituted by third persons, including, but not limited to, governmental agencies or employees of Subcontractor, against Contractor or Owner or their agents or employees or any of them;

(b)     Pay and satisfy and judgment or decree that may be rendered against Contractor or Owner or their agents or employees, or any of them, arising out of any such claim; and/or

(c)     Reimburse Contractor or Owner or their agents or employees for any and all legal expense incurred by any of them in connection herewith or in enforcing the indemnity granted in this Section 16.

16.2     Risk of Loss

All work covered by this Agreement done at the site or in preparing or delivering materials or equipment, or any or all of them, to the site shall be at the risk of Subcontractor exclusively until the completed work is accepted by Contractor.

16.3     No Limitation of Liability

The indemnities set forth in this Section 16 shall not be limited by the insurance requirements set forth in Section 17.

# SECTION 17.  INSURANCE

17.1     Casualty Insurance

Subcontractor shall, at his expense, procure and maintain insurance on all of his operations, in companies acceptable to Contractor, and in accordance with Far Clause 52.0228-4502 minimum insurance required as follows:

17.1.1     Workers' Compensation and Employer's Liability Insurance. Workers' Compensation insurance shall be provided as required by any applicable law or regulation. Employer's Liability insurance shall be provided in amounts not less than:

$1,000,000 each accident for bodily injury by accident
$1,000,000 policy limit for bodily injury by disease
$1,000,000 each employee for bodily injury by disease

If there is an exposure of injury to Subcontractor's employees under the U.S. Longshoremen's and Harbor Workers' Compensation Act, the Jones Act or under laws, regulations or statutes applicable to maritime employees, coverage shall be included for such injuries or claims.

17.1.2     General Liability Insurance. Subcontractor shall carry Comprehensive General Liability or Commercial General Liability insurance covering all operations by or on behalf of Subcontractor providing insurance for bodily injury liability and property damage liability for the limits of liability indicated below and including coverage for:

(1)     Premises and operations;

(2)     Products and completed operations;
(3)     Contractual liability insuring the obligations assumed by Subcontractor in this Agreement;
(4)     Broad form property damage (including completed operations);
(5)     Explosion, collapse and underground hazards; and
(6)     Personal injury liability.

Except with respect to bodily injury and property damage included within the products and completed operations hazards, the aggregate limit, where applicable, shall apply separately to Subcontractor's work under this Agreement.

One of the following coverage forms is required:

- Comprehensive General Liability
- Commercial General Liability (Occurrence)
- Commercial General Liability (Claims Made)

17.1.2.1  Subcontractor shall carry a Comprehensive General Liability policy, the limits of liability shall not be less than a combined single limit for bodily injury, property damage and personal injury liability of: $1,000,000 each occurrence; $1,000,000 aggregate. Contractor, his officers, directors and employees and Owner shall be named as additional insured under the Comprehensive General Liability insurance policy. The policy shall stipulate that the insurance afforded the additional insured shall apply as primary insurance and that any other insurance carried by Contractor, his officers, directors and employees or Owner will be excess only and will not contribute with this insurance.

17.1.3  <u>Automobile Liability Insurance.</u>  Subcontractor shall carry automobile liability insurance, including coverage for all owned, hired and non-owned automobiles. The limits of liability shall be not less than $1,000,000 combined single limit each accident for bodily injury and property damage.

17.1.4  Certificates of insurance, as evidence of the insurance required by this Agreement, shall be furnished by Subcontractor to Contractor before any work hereunder is commenced by Subcontractor. The certificates of insurance shall provide that there will be no cancellation or reduction of coverage without thirty (30) days prior written notice to Contractor.

17.1.5  Contractor may take such steps as are necessary to assure Subcontractor's compliance with his obligations under this Section 16. In the event Subcontractor fails to maintain any insurance coverage required under this Agreement, Contractors may maintain such coverage and charge the expense to Subcontractor, or terminate this Agreement.

17.1.6  The required insurance shall be subject to the approval of Contractor, but any acceptance of insurance certificates by Contractor shall in no way limit or relieve Subcontractor of the duties and responsibilities by him in this Agreement. If higher limits or other forms of insurance are required in the Contract Documents, Subcontractor will comply with such requirements.

17.4  Failure of contractor to enforce in a timely manner any of the provisions of this Section 16 shall not act as a waiver to enforcement of any of these provisions at a later date in the performance of this Agreement. Any exceptions to the provisions of this Section 16 must be delineated in the Contract Documents.

# SECTION 18.  CLAIMS RESOLUTION PROCEDURE
18.1     <u>Agreement to Arbitrate</u>

All claims, disputes and matters in question arising out of, or relating to this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, shall be decided by the claims procedure, including any arbitration clause, specified in the prime contract between Contractor and Owner. In the absence of an agreement to arbitrate in the prime contract, no claims or disputes shall be arbitrated unless provided for in this Agreement or mutually agreed upon by Contractor and Subcontractor in writing.

18.2     <u>Arbitration Procedures (if applicable)</u>

In the event the prime contract contains an arbitration provision or if arbitration is provided for in this Agreement, the following shall apply:

18.21   <u>Notice of Demand.</u>  Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and shall conform to the requirements of the arbitration provision set forth in the prime contract. The demand for arbitration shall be made within a reasonable time after written notice of the claim, dispute or other matter in question has been given, and in no event shall it be made

after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

    18.2.    <u>Award</u>. The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

    18.2.3    <u>Work Continuation and Payment</u>. Unless otherwise agreed in writing, Subcontractor shall carry on the work and maintain the schedule of work pending arbitration, and, if so, Contractor shall continue to make payments in accordance with this Agreement.

    18.2.4    <u>Consolidated Arbitration Proceedings</u>. To the extent not prohibited by their contracts with others, the claims and disputes of Owner, Contractor, Subcontractor and other subcontractors involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding. In this event, it shall be the responsibility of Subcontractor to prepare and present Contractor's case, to the extent the proceedings are related to this Agreement. Should Contractor enter into arbitration with the Owner or others regarding matters relating to this Agreement, Subcontractor shall be bound by the result of the arbitration to the same degree as the Contractor.

    18.2.5    <u>No Limitation of Rights or Remedies</u>. This Section shall not be deemed a limitation of any rights or remedies which Subcontractor may have under any Federal or State mechanics' lien laws or under any applicable labor and material payment bonds unless such rights or remedies are expressly waived by him.

    18.2.6    <u>Jurisdictional Disputes.</u>
a)    The Subcontractor accepts and agrees to be bound by the procedural rules and regulations and decisions of the appropriate tribunals specified in the appropriate labor agreements for the settlement of jurisdictional disputes and will immediately comply with any decisions of said tribunals, which affect the performance of work covered by the Subcontract. Subcontractor agrees to bind, by written contract, all of his subcontractors of every tier to said procedural rules and regulation and decisions of said tribunals in the same manner and to the same effect as provided herein with respect to Subcontractor.
b)    During the performance of Subcontractor's Work, the Subcontractor, its employees, Sub-Subcontractor's and suppliers will use such entrances to the job as maybe designated from time to time by the Contractor.

# SECTION 19. SAFETY PRACTICES
Subcontractor shall comply fully with all laws, orders, citations, rules, regulations, standards and statutes with respect to occupational health and safety, the handling and storage of hazardous materials, accident prevention, safety equipment and practices including the accident prevention and safety program of Owner and Contractor. Subcontractor shall conduct inspections to determine that safe working conditions and equipment exist and accepts sole responsibility for providing a safe place to work for its employees and for employees of its subcontractors and suppliers of material and equipment, for adequacy of and required use of all safety equipment and for full compliance with the aforesaid laws, orders, citations, rules, regulations, standards and statutes.

# SECTION 20. WARRANTY
Subcontractor warrants to Owner, Architect and Contractor that all materials and equipment furnished shall be new unless otherwise specified and that all work under this Agreement shall be of good quality, free from faults and defects and in conformance with the Contract Documents. All work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The warranty provided in this Section 20 shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.

# SECTION 21. USE OF CONTRACTOR'S EQUIPMENT
In the event Subcontractor shall use Contractor's equipment, materials, labor, supplies or facilities, Subcontractor shall reimburse Contractors at a predetermined rate, except as provided in Section 15.1.2 or as otherwise stated herein. Further, Subcontractor assumes all responsibility for physical damage to such equipment, materials, labor, supplies, or facilities used by Subcontractor, Subcontractor shall have full responsibility for all acts or omissions of Contractor's employees with regard to Subcontractor's use or employment of them. Subcontractor accepts any and all of Contractor's equipment, materials, labor, supplies or facilities as furnished. Subcontractor shall also indemnify Contractor, General Contractor and Owner to the same extent as listed in Section 16 above.

# SECTION 22. ASSIGNMENT OF CONTRACT
Subcontractor shall not, without written consent of Contractor, assign, transfer, or sublet any portion or part of the work required by this Agreement, or assign any payment hereunder to others.

## SECTION 23. INDEPENDENT CONTRACTOR

Subcontractor is an independent contractor and shall, at his sole cost and expense, and without increase in the Contract Price, comply with all laws, rules, ordinances and regulations of all governing bodies having jurisdiction over the work; obtain all necessary permits and licenses therefore, all USA layout Permits (for any Underground Work, separate from Contractors USA permit or layout), pay all manufacturers' taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes insurance and contributions for social security and unemployment which are measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules or regulations. Subcontractor, upon request, shall furnish evidence satisfactory to Contractor that any or all of the foregoing obligations have been fulfilled.

## SECTION 24. CLEAN-UP

At all times during the course of construction, Subcontractor shall perform his work so as to maintain the site in a clean, safe and orderly condition. Upon completion of the work under this Agreement, Subcontractor shall remove from the site all hazardous materials, temporary structures, debris and waste incident to his operation and clean all surfaces, fixtures, equipment, etc, relative to the performance of this Agreement.

## SECTION 25. ATTORNEYS' FEES

In the event the parties become involved in litigation or arbitration with each other arising out of this Agreement or other performance thereof in which the services of an attorney or other expert are reasonably required, the prevailing party shall be fully compensated for the cost of its participation in such proceedings, including the cost incurred for attorneys' fees and experts' fees. Unless judgment goes by default, the attorneys' fee award shall not be computed in accordance with any court schedule, but shall be such as to fully reimburse all attorneys' fees actually incurred in good faith, regardless of the size of a judgment, it being the intention of the parties to fully compensate for all attorneys' fees and experts' fees paid or incurred in good faith.

## SECTION 26. LABOR AGREEMENTS (List labor agreements to which Contractor is signatory or enter NONE if Contractor has no labor agreements.) NONE

## SECTION 27. SPECIAL PROVISIONS (Including unit pricing, if applicable)

Subcontractor shall not enter any job site until K.O.O. Construction, Inc. has received the appropriate insurance certificates according to Section 17 of this Subcontract Agreement.

**CONTRACTORS ARE REQUIRED BY LAW TO BE LICENSED AND REGULATED BY THE CONTRACTORS STATE LICENSE BOARD. ANY QUESTIONS CONCERNING A CONTRACTOR MAY BE REFERRED TO THE REGISTRAR OF THE BOARD, WHOSE ADDRESS IS:**

State of California

Dated: 09|04|2012
CONTRACTOR: K.O.O. CONSTRUCTION, INC.

By _____
(Keith O. Odister)

2510 Boatman Avenue

West Sacramento, CA 95691
(Address)

560169
(Contractor's License No.)

Dated: 8/27/2012
SUBCONTRACTOR: Davis Mechanical Systems

By _____
(                    )

1316 North Melrose Drive, Suite E

Vista, CA 92083-2920
(Address)

584824
(Contractor's License No.)

12

THE INFORMATION CONTAINED IN THIS PROPOSAL IS PROPRIETARY
AND SHALL NOT BE DUPLICATED, USED, OR DISCLOSED IN ANY
MANNER FOR ANY PURPOSE WITHOUT THE EXPRESS WRITTEN
CONSENT OF DAVIS MECHANICAL SYSTEMS.

July 23, 2012

*NO Charge order*

KOO Construction

Re:    PTO #X044 D/B Repairs to BEQ 210724 PV System
       Marine Corp Base
       Camp Pendleton, CA
       Contract N62473-08-D-8641 IDIQ MACC

*Center Core*
*Package*

Subject:  Design/Build (RFP) Wet HVAC & Plumbing Cost Proposal

Gentlemen:                                    *Combines Units*

We are pleased to submit our cost proposal of See Below for the Wet HVAC and Plumbing portion of the above
referenced project. This proposal is based on the above referenced RFP dated 5/12/11 including addendums
#1,2,3, and #4, and KOO/SC Engineers mechanical design dated 06-08-2012. Davis Mechanical is a woman
owned minority small business.

    Wet HVAC Base Bid: $ 175,000.00     Add for Dry HVAC 377,500.00 Includes Tab's and Controls

    Plumbing Base Bid:  $ 185,000.00              *552500*   *#700000*

This proposal includes the following:           *$735000*

HVAC—Base Bid:

   • Provide and install (56) fin tube base board heaters with thermostatic radiator valves.
   • Provide and install (1) heating hot water condensing boiler.
   • Provide and install (2) hhw coil piping connections only to make-up air units provided by others.
   • Provide and install (2) heating water pumps w/ vfd's.
   • Provide and install (1) expansion tank.
   • Provide and install (1) air separator.
   • Provide and install mech. type K copper piping hhw piping CPR Requirement, piping insulation on
     new work only, and associated valves & fittings on new piping only. Existing piping is not included.

Plumbing—Base Bid:           *( NO Louvers )*        *Repair Any Ins. Damaged*
                                                    *At mech replace Insulation*
                                                    *on piping*
   • Provide and install (4) floor drains w/ trap primer.
   • Provide and install (12) washer boxes.
   • Provide and install (2) mop sinks w/ faucets.
   • Provide and install (2) laundry sinks w/ faucets.        *specialmeter*
   • Provide and install (8) water hammer arrestors.          *Req for Meter*
   • Provide and install (1) gas regulators and (1) connection to existing gas meter.
   • Provide and install (26) gas connections.
   • Provide and install (1) emergency eye/face wash. — *Emergency Shower*
   • Provide and install (1) domestic hot water heater.           *WE*
   • Provide and install (1) thermostatic mixing valve for the water heater.   *Ar 88990*
   • Provide and install (1) domestic water 800 gallon storage tank.   *In hole*

                                Page 1 of 2

- Provide and install (1) backflow preventer.
- Provide and install (1) floor sink with trap primer. ← *COVD*
- Provide and install (7) hose bibs.
- Provide and install (2) water coolers.
- Provide and install (1) electronic water meter.
- Provide and install (1) condensate connection.
- Provide and install misc. plumbing waste & copper type K water piping modifications, gas piping, condensate piping associated valves, fitting, sleeves, fire caulking, chlorination, and plumbing insulation on new work only complete and ready for use to five feet-out per Camp Pendleton Requirement.

Note:
1. No site gas and or wet site utilities.
2. No boot wash and sand separator.
3. Plumbing and gas is based on modifications to the existing system which is to remain.

This proposal does not include any *demolition*; HVAC ductwork, grilles, registers, diffusers, fans, T.A.B.'s, controls, refrigeration, duct insulation; concrete pads; site storm, site utilities unless specifically mentioned above; all temporary services; all spoil/rubbish removal from site/dumpster fees; all asbestos removal; all fireproofing; all fire protection; all dewatering; all landscape shrubs/plants; all final cleaning of piping, equipment, and fixtures; all rock, hard pan, boulder excavation; all miscellaneous metals/irons/frames and grates; rodent protection; all concrete/asphalt cutting and patching; all inspection costs and fees; all spoil grading; cutting, coring, painting, patching; magnetic starters or disconnects, 120vac power wiring, louvers and door grilles; ceiling/wall/roof access doors or panels; all engineering fees, drawings, calculations; any DDC controls or tie-into basewide EMCS; bond fees or permits; duct smoke detectors and any associated fire alarm requirements.

We thank you for the opportunity to work with you on this project. Should you have any questions, please do not hesitate to contact our office.

Sincerely,

*SAFE OFF
R&D*

William Laster
Senior Estimator/ VP

1316 North Melrose Drive, Suite E, Vista, CA 92083-2920
(760) 724-3990  (760) 724-4047
License No. 584824

| | |
|---|---|
| From: | Will Laster [will@davismech.com] |
| Sent: | Tuesday, July 24, 2012 3:29 PM |
| To: | Greg Eichelman |
| Subject: | 21 area BEQ |

Greg, The best that I can do for the mechanical system is 520,000.00. This is without Tab's and no demo. Safe-off only is included.

Best Regards,

William Laster
Sr. Estimator/VP
Davis Mechanical Systems
1316 N. Melrose Dr. Suite E
Vista, Calif. 92083
Ph. 760-724-3990
Fax 760-724-4047
Email: Will@Davismech.com

520
185
—————
705

| | |
|---|---|
| From: | Will Laster [will@davismech.com] |
| Sent: | Tuesday, July 24, 2012 3:29 PM |
| To: | Greg Eichelman |
| Subject: | 21 area BEQ |

Greg, The best that I can do for the mechanical system is 520,000.00. This is without Tab's and no demo. Safe-off only is included.

Best Regards,

William Laster
Sr. Estimator/VP
Davis Mechanical Systems
1316 N. Melrose Dr. Suite E
Vista, Calif. 92083
Ph. 760-724-3990
Fax 760-724-4047
Email: Will@Davismech.com



## STATEMENT AND ACKNOWLEDGMENT

OMB No.: 9000-0014
Expires: 5/31/2011

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat, (VIR), Regulatory and Federal Assistance Division, GSA, Washington, DC 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0014), Washington, DC 20503.

### PART I - STATEMENT OF PRIME CONTRACTOR

| 1. PRIME CONTRACT NO. | 2. DATE SUBCONTRACT AWARDED | 3. SUBCONTRACT NUMBER |
|---|---|---|
| N62473-09-D-1618  0005 | 08/10/2012 | |

| 4. PRIME CONTRACTOR | 5. SUBCONTRACTOR |
|---|---|
| a. NAME K.O.O. Construction Inc. | a. NAME Davis Mechanical System |
| b. STREET ADDRESS 2510 Boatman Avenue | b. STREET ADDRESS 1316 North Melrose Drive Suite E |

| c. CITY | d. STATE | e. ZIP CODE | c. CITY | d. STATE | e. ZIP CODE |
|---|---|---|---|---|---|
| West Sacramento | CA | 95691 | Vista | CA | 92083 |

6. The prime contract [X] does, [ ] does not contain the clause entitled "Contract Work Hours and Safety Standards Act -- Overtime Compensation."

7. The prime contractor states that under the contract shown in Item 1, a subcontract was awarded on the date shown in Item 2 to the subcontractor identified in Item 5 by the following firm:

a. NAME OF AWARDING FIRM
K.O.O. CONSTRUCTION INC.

b. DESCRIPTION OF WORK BY SUBCONTRACTOR
Subcontractor agrees to furnish all labor, materials, equipment and other facilities required to perform the work to complete the following per NAVFAC RFP Documents dated March 1, 2010, Amendments 1-7, Tectonics plans and specifications dated June 8, 2012:
1. Mechanical HVAC System
2. Mechanical Plumbing System

| 8. PROJECT | 9. LOCATION |
|---|---|
| PE-0902M Repair of BEQ B-210724 & PE11196PV System | Del Mar Area Marine Corps Base (MCB), Camp Pendleton, CA |

| 10a. NAME OF PERSON SIGNING Keith O. Odister | 11. BY (Signature) | 12. DATE SIGNED 09-04-2012 Sept 4, 2012 |
|---|---|---|
| 10b. TITLE OF PERSON SIGNING President/CEO | | |

### PART II - ACKNOWLEDGMENT OF SUBCONTRACTOR

13. The subcontractor acknowledges that the following clauses of the contract shown in Item 1 are included in this subcontract:

Contract Work Hours and Safety
    Standards Act - Overtime
    Compensation - (if included in prime contract see Block 6)
Payrolls and Basic Records
Withholding of Funds
Disputes Concerning Labor Standards
Compliance with Davis-Bacon and Related Act Regulations

Davis-Bacon Act
Apprentices and Trainees
Compliance with Copeland Act Requirements
Subcontracts (Labor Standards)
Contract Termination - Debarment
Certification of Eligibility

14. NAME(S) OF ANY INTERMEDIATE SUBCONTRACTORS, IF ANY

| A | NATHAN WULFF  WULFF MECHANICAL | C | |
|---|---|---|---|
| B | FAR WEST INSULATION | D | |

| 15a. NAME OF PERSON SIGNING BRIGITTE WALKER | 16. BY (Signature) | 17. DATE SIGNED 8/27/2012 |
|---|---|---|
| 15b. TITLE OF PERSON SIGNING PRESIDENT | | |

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1413 (REV. 7/2005)
Prescribed by GSA/FAR (48 CFR) 53.222(e)

# EXHIBIT "2"

| Bond #105676876<br>**PAYMENT BOND**<br>(See Instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of Contract)<br>11/15/2011 | OMB NO.: 9000-0045<br>Expires 11/30/2012 |

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

**PRINCIPAL** (Legal name and business address)

K.O.O. CONSTRUCTION, INC.
2510 Boatman Ave.
West Sacramento, CA 95691

**TYPE OF ORGANIZATION ("X" one)**

| ☐ INDIVIDUAL | ☐ PARTNERSHIP |
| ☐ JOINT VENTURE | ☒ CORPORATION |

STATE OF INCORPORATION
CA

**SURETY(IES)** (Name and business address)

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
One Tower Square
Hartford, CT 06183-6014

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDFREDS(S) | CENTS |
|---|---|---|---|
| 003 | 472 | 502 | 00 |

| CONTRACT DATE<br>11/04/2011 | CONTRACT NO.<br>N62473-09-D-1618<br>Task Order #0005 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally however, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing joint actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**K.O.O. CONSTRUCTION, INC.                    PRINCIPAL**

| SIGNATURE(S) | 1.<br>(Seal) | 2.<br>(Seal) | 3.<br>(Seal) | Corporate<br>Seal |
| NAME(S) &<br>TITLE(S)<br>(Typed) | 1.<br>Keith Odister<br>President/CEO | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| SIGNATURE(S) | 1.<br>(Seal) | 2.<br>(Seal) |
| NAME(S)<br>(Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| | NAME &<br>ADDRESS | TRAVELERS CASUALTY AND SURETY COMPANY OF<br>AMERICA - One Tower Square, Hartford, CT 06183-6014 | STATE OF INC.<br>CT | LIABILITY LIMIT ($)<br>$129,065,000.00 | |
|---|---|---|---|---|---|
| SURETY A | SIGNATURE(S) | 1. Erin Russell | | 2. | Corporate<br>Seal |
| | NAME(S) &<br>TITLE(S)<br>(Typed) | 1.<br>Erin Russell, Attorney-in-fact | | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

**STANDARD FORM 25A** (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.2228 (c)

| | | | | STATE OF INC. | IBILITY LIMIT ($) | |
|---|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | | | | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | 2. | | |
| **SURETY C** | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | 2. | | |
| **SURETY D** | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | 2. | | |
| **SURETY E** | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | | | 2. | | |
| **SURETY F** | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | 2. | | |
| **SURETY G** | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space

designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring Adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25A ( REV. 10-98)  BACK